E. F. DREW & CO., Inc., Plaintiff-Appellant,

v.

PAM INDUSTRIES, INC., Defendant-Appellee.

No. 13531.

United States Court of Appeals Seventh Circuit.

March 12, 1962.

Albin C. Ahlberg, Chicago, Ill., Jordan B. Bierman, Harry C. Bierman, New York City, for appellant.

William J. Stellman, Arthur Morse, James R. Sweeney, Chicago, Ill., for appellee.

Before CASTLE and KILEY, Circuit Judges, and MERCER, District Judge.

CASTLE, Circuit Judge.

E. F. Drew & Co., Inc., plaintiff-appellant, brought this action in the District Court against Pam Industries, Inc., defendant-appellee, alleging trade-mark infringement and unfair competition and seeking injunctive relief and damages. Plaintiff is engaged in the manufacture and sale of vegetable oils and fats and products derived therefrom. In September 1954 it was granted registration of the mark "Dri-Fri" on the U. S. Patent Office Supplemental Register (Registration No. 595,002) used in connection with a vegetable fat for edible purposes. In 1958 the defendant, in connection with its mark "Pam", commenced the use of the words "Dry Fry" in the labeling and advertising of a pan releasant produced and distributed by it.

The District Court, after a hearing on the merits, entered findings of fact and conclusions of law. It found and concluded that the plaintiff's mark "Dri-Fri" is descriptive, has not by plaintiff's use acquired a secondary meaning, that plaintiff is not entitled to its exclusive use, and that the defendant has not competed unfairly with the plaintiff. The District Court dismissed the complaint and plaintiff appealed.

The contested issues presented by plaintiff's appeal, as we perceive them, are whether the District Court's findings of fact are clearly erroneous and whether its conclusions are based on correct legal criteria.

The record discloses that plaintiff uses the mark "Dri-Fri" only in connection with a vegetable oil product sold by it to food manufacturers for use in deep fat frying. Some sales of the product are made in tank-wagon lots of 15,000 to 30,000 pounds. It is normally sold in 400 pound drums labeled "Dri-Fri" but labeled 50 pound pails are available. The average sale is from five to ten drums. It is primarily used in large vats for the deep fat frying of potato chips. It is not a grocery store item. A characteristic quality of the product is that food fried in it will have a drier feel. The general manager of plaintiff's edible oils division testified that the connotation of the mark to the trade "would be that the product has a drier look, a drier feel, a

drier taste; that there is less fat actually imparted to the product and, consequently, less calories." Plaintiff has not advertised its mark in any media and its use of the mark has been restricted to the labeling of the drums and pails containing the product and in a one-page brochure describing its characteristics. An application by plaintiff to register "Dri-Fri" on the Principal Register was refused on the ground the mark was descriptive. The plaintiff acquiesced in the ruling and amended its application to request the registration on the Supplemental Register.

Defendant's product, in connection with which it uses the words "Dry Fry", consists of lecithin and freon packaged in an aerosol type container sold in three sizes, namely 4½ ounces, 9 ounces, and 18 ounces. It is used to spray an invisible film of lecithin on a frying pan so that food may be fried without the use of fat. It is primarily sold to housewives through retail grocery stores. The defendant has engaged in extensive newspaper, radio and television advertising directed to the housewife in the promotion of its pan releasant.

The two products involved are marketed through different channels and intended for different classes of consumers. Although the words "Dri-Fri" and "Dry Fry" are identical phonetically and similar in spelling the product each is used in connection with is quite different from the other and the meaning of the words as related to each product is different. "Dri-Fri" is used in connection with an oil used for frying to indicate that the food fried therein will not become greasy but remain dry. "Dry Fry" is used in connection with a spray used to treat a pan so that frying may be done therein without the use of oil or fat—so that a dry pan may be used to fry food. It eliminates the use of oils or fats in pan frying.

We conclude that the record amply supports the District Court's finding and conclusion that plaintiff's mark is descriptive. And a mark which is merely descriptive of a quality or characteristic of a product cannot be appropriated as a trademark and the exclusive use of it afforded legal protection. William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161. In National Nu Grape Co. v. Guest, 10 Cir., 164 F.2d 874, 876 it was pointed out:

> "A descriptive mark is bad for two reasons: First, because it does not advise the public that the article comes from a single source; and second, that if so, since the word is descriptive of the goods, the protection of the word as a trade-mark would be an infringement upon common speech, which, in the use of the word, likewise is descriptive."

Here there is absence of proof that the mark "Dri-Fri" had acquired a secondary meaning and "words of description, absent a secondary meaning, have always been free to the use of anyone to describe the quality and character of his product". Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., 8 Cir., 199 F.2d 407, 411. In Kellogg Company v. National Biscuit Company, 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73, it was observed that to establish acquisition of a secondary meaning entitling exclusive use of a term it must be shown that "the primary significance of the term in the minds of the consuming public is not the product but the producer". In the instant case the plaintiff's general manager, Ledden, testified that the connotation of plaintiff's mark is its quality of producing a drier finished fried product. There is no showing that "Dri-Fri" had become an identification of the plaintiff, E. F. Drew & Co., Inc. Moreover, no confusion with respect to origin of the products, because of the similarity in the words used, which would mislead prospective purchasers is shown. Although there is testimony that plaintiff has received inquiries indicating curiosity on the part of some of its customers as to whether it was connected with the "Dry Fry" product such evidence is inadequate to establish the likelihood of confusion requisite

to recognition of a right in the plaintiff to the relief and recovery it seeks. Sleeper Lounge Company v. Bell Manufacturing Company, 9 Cir., 253 F.2d 720, 722–723. And in view of the difference in nature, use, packaging, marketing and class of consumers there is no likelihood of confusion.

The District Court's findings and conclusions that defendant's use of the words "Dry Fry" on its product is an accurate description of its properties and neither deceptive, nor used with deceptive intent or result, nor an appropriation of any good will belonging to plaintiff, nor an attempt to trade on plaintiff's reputation, nor a palming off of its product as plaintiff's, all have substantial support in the record.

We are of the opinion that in so far as the District Court's judgment is based on factual findings it is amply supported by substantial evidence, cannot be said to be clearly erroneous, and that the court applied correct legal criteria in reaching the conclusions it did. The judgment order of the District Court is therefore affirmed.

Affirmed.